2005 VT 74

**STATE of Vermont v. Jamie OVITT**

[878 A.2d 314]

No. 04-071

¶ 1. July 6, 2005. The State charged defendant Jamie Ovitt with first-degree

murder for the killing and subsequent burial of his mother's ex-husband, Duane Perry. A jury convicted defendant of the lesser-included charge of second-degree murder, which carries a statutory presumptive sentence of twenty years to life. 13 V.S.A. § 2303(b). At trial, the court excluded evidence of a prior incident offered in support of defendant's claim that the homicide was justified because he acted in self-defense. At sentencing, the trial court found that the aggravating and mitigating factors effectively negated each other, and therefore imposed the presumptive sentence of twenty years to life. Defendant appeals, contending that the trial court erred in excluding testimony about one of the victim's prior violent acts, and that the sentencing procedure in 13 V.S.A. § 2303 is unconstitutional. We affirm.

¶ 2. On April 15, 2000, Duane Perry went to the trailer where defendant lived with his mother to purchase an ATV from her. Sometime between 6:00 that night and 7:30 the following morning, defendant shot Perry in the back of the head and buried his body under construction debris and sand in an old cellar hole nearby. On April 18, one of Perry's co-workers called his mother to tell her that Duane Perry, normally not one to miss work, had not come in that day. Duane's mother then called the state police, who found Duane's pickup truck at a highway rest stop in Ryegate on April 19. The police deduced, by interviewing other motorists, that the truck had been left at the rest area on the night of April 15. When the police found the truck, the ignition had been "punched out" and was on the floor in the cab, and a bill of sale for the ATV was on the passenger seat. On May 2, 2000, the state police found Duane Perry's body buried under layers of sand and demolition debris in the cellar hole.

¶ 3. Over the next year, defendant developed a relationship with a woman,

and in June or July of 2001 moved to Connecticut to live with her. In October of that year, the woman asked defendant if he was involved in Duane's murder. Defendant asked her to swear not to tell anyone what he told her. When she swore secrecy, defendant admitted to shooting the gun that killed Duane after an argument between Duane and defendant's mother. Defendant went on to describe hot-wiring the truck and leaving it at the rest area in Ryegate, and disposing of the murder weapon by grinding it into "little pieces and spread[ing it] throughout the 10 Mile Square Road." Defendant's girlfriend kept her promise not to tell until December 2001, when she told the Vermont State Police what defendant had told her about the murder. The State subsequently charged defendant with first-degree murder.

¶ 4. At trial, in support of his self-defense claim, defendant introduced evidence about his relationship with Duane Perry, including evidence of Duane's prior acts of violence towards him and others. Defendant testified that Duane physically and sexually abused him from 1991 until about 1994, including an incident when Duane kicked defendant between the legs, and another when Duane smashed defendant's head and his brother's head together. Defendant's uncle testified to an incident in which Duane had chased a dog through the uncle's house with a loaded gun, shooting at the dog at least six times and nearly killing it.

¶ 5. Defendant planned to introduce into evidence his uncle's testimony concerning another incident in 1991 or 1993, when Duane allegedly entered the uncle's house and threatened him with a gun after a "logging incident." The trial court excluded the testimony. The court offered no explicit reasons for doing so, but decided to exclude the testimony after a colloquy in which the prosecution noted

that the incident had happened seven to nine years before the murder.

¶ 6. The trial court later instructed the jury that they could consider Duane's past "threats or violent acts" in deciding whether the murder was justifiable on self-defense grounds. The jury instruction on self-defense was as follows:

> The right of self-defense doesn't arise from a fear of danger in general, [but] from actually or reasonably expected physical attack. This fear of the defendant of an immediate attack must be a reasonable fear. In considering whether it was reasonable for the defendant to expect an immediate physical attack, you may keep in mind whether the defendant, that is Mr. Ovitt, knew of other threats or violent acts by Duane Perry and whether Duane Perry had a general character for violence which the defendant, that is Mr. Ovitt, was aware of.

The jury convicted defendant of second-degree murder, which carries a presumptive sentence of twenty years to life. 13 V.S.A. § 2303(b). After a sentencing hearing, the trial judge determined that the aggravating and mitigating factors present warranted imposition of the presumptive sentence, and sentenced defendant to serve twenty years to life. Defendant appeals.

¶ 7. Defendant argues that the trial court abused its discretion in excluding his uncle's testimony about the incident in which Duane threatened the uncle with a gun. Defendant contends that the evidence would have given the jury a reason to find that his fear of imminent attack was reasonable. Defendant asserts that the evidence should have been admitted under V.R.E. 405(b) as an "essential element" of defendant's claim that the homicide was justified. The State argues that V.R.E. 405(b) does not allow admission of evidence of the victim's prior bad acts, because the victim's character is not a statutory element of self-defense.

¶ 8. The trial court has broad discretion to admit or exclude evidence. *In re A.B.*, 170 Vt. 535, 536, 740 A.2d 367, 369 (1999) (mem.). We reverse trial court evidentiary rulings only when we find an abuse of that discretion resulting in prejudice. *Id.*

¶ 9. The Vermont Rules of Evidence permit evidence of prior acts only for limited purposes. Evidence of prior acts is not admissible to show that a person acted in conformity therewith on a later occasion. V.R.E. 404(a), (b). Rule 404 permits defendants to offer evidence of their victim's character in certain situations. V.R.E. 404(a)(2). Even if character evidence is admissible under 404, the form of the evidence is limited by Rule 405. Under 405(b), proof may be made by specific instances of a person's conduct when the character of a person is an "essential element" of a claim or defense. V.R.E. 405(b). Finally, although evidence may be admissible under Rule 405, the trial court retains discretion under Rule 403 to exclude the evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." V.R.E. 403. The trial judge does not need to articulate the precise weights assigned to the probative value or prejudicial effect of evidence, or specify why one outweighs the other. *State v. Derouchie*, 153 Vt. 29, 35, 568 A.2d 416, 419 (1989).

¶ 10. Defendant claimed self-defense under 13 V.S.A. § 2305(1). Title 13 V.S.A. § 2305(1) defines justifiable homicide as killing which occurs "[i]n the just and necessary defense" of one's own life or the life of certain defined others. A per-

son who is found to be justified in killing another "shall be guiltless." 13 V.S.A. § 2305. In order to benefit from § 2305's protection, a defendant must have reasonably believed that he or she was in imminent peril, and that it was necessary to repel that peril with deadly force. *State v. Wheelock*, 158 Vt. 302, 307, 609 A.2d 972, 975 (1992).

¶ 11. Without deciding whether the evidence of the victim's prior acts could be admissible under Rule 405, we conclude that the trial court did not abuse its discretion in excluding the evidence under Rule 403. The proffered testimony concerned an incident that occurred seven to nine years prior. The substantial interval between the prior act and the current case makes the evidence less probative, and may confuse the jury. Moreover, the exclusion of this evidence did not prevent defendant from exercising his right to present a defense. Defendant introduced evidence supporting his claim of self-defense, including the victim's prior acts of violence towards him, and the victim's incident with the dog. There was no error.

¶ 12. Defendant next contends that 13 V.S.A. § 2303 violates Chapter I, Article 10 of the Vermont Constitution by authorizing a sentencing court to make judicial determinations of aggravating circumstances which "expose" defendants to sentences greater than the presumptive minimum.

¶ 13. We have often stressed that we will not consider issues not raised in the proceeding below. *State v. Gibney*, 2005 VT 3, ¶ 4, 177 Vt. 633, 869 A.2d 118 (mem.); *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001). An issue is not preserved for appeal unless a party raises it with specificity and clarity below, thereby ensuring that the trial court will have an opportunity to fully develop the relevant facts and to reach considered legal conclusions. *White*, 172 Vt. at 343, 779 A.2d at 1270; see also *State v.*

*Ben-Mont Corp.*, 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994) (concluding that single mention of "fairness" in brief was insufficient to preserve due process challenge for appeal); *State v. Emmi*, 160 Vt. 377, 380, 628 A.2d 939, 941 (1993) (concluding that mere assertion given at trial, that court "should examine the legitimacy" of electronic surveillance without a warrant, was insufficient to preserve constitutional challenge for appeal).

¶ 14. Defendant's assertion — that the Vermont Constitution prohibits trial courts from imposing the statutorily mandated minimum sentence based on judicial balancing of sentencing factors — was not raised below with sufficient clarity to preserve it for appeal. Defendant's sentencing memoranda at trial explicitly conceded that the trial judge may impose a sentence "no higher than the presumptive minimum," and that "the only permissible inquiry [is] whether there are mitigating circumstances which lower the presumptive sentence." Defendant's preliminary sentencing memorandum challenges "enhancement of" and "increasing" the statutorily mandated sentence based on judicial balancing, but does not assert that the imposition of the statutory minimum would implicate due process concerns. Nor did defendant's second sentencing memorandum clearly raise that issue. We therefore do not consider it.

*Affirmed.*