NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 30

No. 2014-427

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Tisa Farrow | December Term, 2015 |

Robert A. Mello, J.

Gregory Nagurney, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Mark Eastman Furlan of Furlan & Associates, PLLC., Rutland, for Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **ROBINSON, J.** This case calls upon us to consider the admissibility of evidence of defendant's decision not to complete a field sobriety exercise as requested by a police officer in the context of an answer to a question we left open in a prior decision: Under the Vermont Constitution, is a defendant's refusal or failure to perform voluntary field sobriety exercises admissible if the defendant was not advised at the time of the refusal that evidence of a refusal to perform the exercises may be admissible in court? We conclude that the refusal evidence is admissible without regard to whether police advised the individual that a refusal to perform the exercises could be admitted as evidence in court. Because we reject defendant's argument to the contrary on this point, as well as her arguments that on the record in this case the evidence in question was irrelevant and unduly prejudicial, we affirm.

¶ 2.     The relevant background is as follows.  Defendant was arraigned on charges of driving under the influence (DUI) pursuant to 23 V.S.A. § 1201(a)(2) ("A person shall not operate . . . any vehicle on a highway . . . when the person is under the influence of intoxicating liquor.").[1]

¶ 3.     Before trial, defendant filed a motion in limine seeking to exclude from evidence the arresting officer's testimony about his observations and opinion regarding defendant's performance of the "Modified Rhomberg Test" (MRT),[2] as well as the videotape of the event. Defendant had previously declined to perform field sobriety tests.  Thereafter, at the officer's request, defendant began the exercise in question, which involved closing her eyes, leaning her head back, and counting thirty seconds.  She stopped five to eight seconds later, indicating that she did not want to do the exercise.  Defendant's written motion stated that the MRT evidence was irrelevant because the exercise was never completed and was thus unreliable, and that even if the evidence was marginally relevant, any probative value it had was substantially outweighed by the danger of unfair prejudice.

¶ 4.     Argument on this motion overlapped somewhat with pretrial discussion of the court's proposed jury instructions.  Defense counsel argued that telling the jury it could infer consciousness of guilt from defendant stopping the exercise but not allowing the jury to consider any number of other reasons why she may have stopped the exercise would be highly prejudicial. During the argument on this motion, defense counsel also suggested that defendant was told to take the test, and was not given an opportunity to refuse.

---

[1]   Defendant does not appeal her convictions for driving with a suspended license, reckless endangerment, and violation of conditions of release associated with the same incident, and we do not address them here.  See, e.g., Foster & Gridley v. Winner, 169 Vt. 621, 622, 740 A.2d 1283, 1285 (1999) (mem.).

[2]   The MRT is a balance test requiring the participant to stand with arms at side, feet together, and head back while closing his or her eyes for thirty seconds.

2

¶ 5.    In response, the State emphasized it was not planning to present the interrupted MRT as a "test," but rather as an exercise that led to the trooper's observations that defendant swayed briefly before stopping the exercise.

¶ 6.    The trial court denied defendant's motion in limine and admitted the contested evidence. The trial court noted that this Court had held that a defendant's failure or refusal to do a voluntary field sobriety exercise is relevant as evidence of consciousness of guilt. See State v. Curavoo, 156 Vt. 72, 74-75, 587 A.2d 963, 964-65 (1991) (rejecting defendant's argument that trial court erred by allowing evidence of his refusal to perform field sobriety exercises). The trial court also noted, however, that this Court had specifically declined to reach the argument that, absent a warning that a refusal can be used against a defendant at trial, the refusal cannot be used in that way. Id. at 74 n.1, 587 A.2d at 964 n.1. With respect to the jury instruction, the trial court made it clear that it would instruct the jurors that, in addition to considering the possibility that defendant's decision to stop the test reflected consciousness of guilt, they could consider other explanations raised by the defense.

¶ 7.    At trial, the state trooper who arrested defendant testified to the following facts. At approximately 9:20 in the morning of September 17, 2012, the trooper stopped defendant after observing that she was driving a car with an expired inspection sticker. Upon approaching the car and seeing signs that she was intoxicated, the trooper ordered defendant to get out of the car. When she did, the trooper observed three empty six-to-eight-ounce wine bottles on the floorboard of the car. Defendant admitted to the trooper that she had consumed the contents of those bottles that morning. When the trooper asked defendant to perform field sobriety exercises, she said she did not want to because she was old[3] and had problems with her balance. The trooper testified that DUI suspects during roadside stops are not required to perform field sobriety exercises. After defendant declined to do field sobriety exercises, the trooper asked her

_____

[3] The trooper testified that defendant was sixty-one years old.

to stand with her feet together, arms at her side, eyes closed, and her head tilted back while she counted the passage of thirty seconds. The officer testified that defendant started to do the exercise for a few seconds before opening her eyes and saying either that she could not, or did not want to, continue the exercise. He also testified that during the few seconds she attempted to perform the exercise she swayed before opening her eyes and stopping. The jury then watched a brief video recording of defendant attempting to perform the exercise. The trooper testified that he arrested defendant on suspicion of DUI on the basis of the above evidence.[4]

¶ 8.    Defendant neither testified nor presented any evidence.

¶ 9.    Following the close of evidence, the trial court denied defendant's motion for judgment of acquittal. With no objection from the defense, the court instructed the jury as follows:

> There has been testimony in this case about whether [defendant] declined—whether or not she declined to perform field sobriety tests. Under the laws of the State of Vermont, an operator suspected of driving while under the influence of intoxicating liquor has a statutory right to refuse to perform field sobriety tests.[5] You may consider whether [defendant] refused to perform field sobriety tests and may use this evidence, along with other evidence, to decide whether the State has met its burden of proving each of the essential elements of the offense beyond a reasonable doubt. However, you are not required to draw any inference from this evidence.

---

[4] The State did not introduce any evidence of defendant's blood alcohol concentration—an essential element of a DUI charge pursuant to 23 V.S.A. § 1201(a)(1), but not pursuant to § 1201(a)(2).

[5] Vermont's statutes do not actually address a driver's right to refuse to engage in field sobriety tests, as contrasted with a preliminary breath test, but we have judicially recognized that an officer may not physically force an individual to perform field-sobriety exercises. See State v. McGuigan, 2008 VT 111, ¶ 17, 184 Vt. 441, 965 A.2d 511 (recognizing that roadside detainees may refuse to submit to field sobriety tests and police may not physically force detainees to perform tests); State v. Blouin, 168 Vt. 119, 122, 716 A.2d 826, 828 (1998) (concluding that police have right to request performance of field sobriety tests and individual has right to refuse to perform them); see also Commonwealth v. Blais, 701 N.E.2d 314, 319 (Mass. 1998) ("The very nature of [field-sobriety tests] makes the use of force to compel their performance obviously inappropriate.").

¶ 10. The jury found defendant guilty. Following the jury's guilty verdict on the DUI charge, defendant stipulated to having been convicted of DUI on two previous occasions, thereby subjecting her to an enhanced punishment for DUI, third offense.

¶ 11. On appeal, defendant challenges the trial court's admission of the video recording and the trooper's testimony concerning defendant's conduct and ultimate cessation of the MRT on the basis of the Vermont Rules of Evidence and the Vermont Constitution. With respect to the challenge under the Rules of Evidence, she contends that the trial court erred in concluding that the contested evidence was relevant and in failing to engage in a Rule 403 balancing test before admitting the evidence. With respect to the latter, she argues based on the Fourth and Fifth Amendments to the United States Constitution and Chapter I, Articles 10 and 11 of the Vermont Constitution that evidence of her terminating her participation in the exercise, offered through the video and the trooper's testimony, may not be admitted to show consciousness of guilt when the trooper did not advise her that her refusal to do the exercise might be used against her at trial.[6]

¶ 12. Two prior decisions of this Court serve as the starting point for our analysis of both sets of challenges. We have twice held that an individual's refusal to perform a requested exercise may be admissible in court. In Curavoo, we rejected the defendant's argument that because he had a right to refuse to perform field dexterity tests, his refusal could not be admitted in court. 156 Vt. at 74-75, 587 A.2d at 964-65. We cited a South Dakota case holding that a refusal to submit to field dexterity tests is evidence of consciousness of guilt, and explained that all relevant evidence is admissible, except as limited by constitutional requirements, statute, rules

---

[6] At oral argument, in direct contradiction of her briefing on appeal, defendant further argued that we should overrule our decision in Blouin, in which we held that an individual's refusal to perform a field sobriety test is non-testimonial and therefore admissible in evidence. 168 Vt. at 121-22, 716 A.2d at 828. We will not address an argument raised for the first time at oral argument, especially when it contradicts defendant's brief on appeal. See TD Banknorth, N.A. v. Dep't of Taxes, 2008 VT 120, ¶ 33, 185 Vt. 45, 967 A.2d 1148.

of evidence, or other legal rules.  Id. (citing State v. Hoenscheid, 374 N.W.2d 128, 132 (S.D. 1985)).  Because the defendant did not identify any source of law for excluding the evidence, we concluded that it was properly admitted.  Id.  In a footnote, we acknowledged the defendant's argument that he was not warned that his refusal would be admissible in court, but because he did not raise the argument below, the record was silent regarding whether warnings were, in fact, provided at the time of the request.  Finding no plain error, we declined to address the argument. Id. at 74 n.1, 587 A.2d at 964 n.1.

¶ 13.  When we elaborated on the issue in Blouin, we emphasized the absence of any statutory or constitutional constraint on the admission of such refusal evidence, but did not revisit the question of whether an officer requesting participation in a field sobriety exercise must warn of the potential admissibility of a refusal.  168 Vt. at 122, 716 A.2d at 828.  In that case, the trial court excluded evidence of the defendant's refusal to perform a field sobriety exercise, concluding that because the defendant had a right to refuse to comply with the officer's request, the refusal was inadmissible.  This Court granted the State's request for interlocutory appeal. Citing Curavoo for the proposition that evidence of a motorist's refusal to perform a sobriety test is probative of guilt, and therefore relevant, we considered whether any rule of law would nonetheless require exclusion of the evidence.  Blouin, 168 Vt. at 121, 716 A.2d at 828.  We rejected the argument that introduction of a refusal to perform a field sobriety exercise violated the defendant's privilege against self-incrimination.  Id.  Relying on a United States Supreme Court decision, we emphasized that the field exercise in question elicits a person's physical, rather than testimonial, response and therefore does not trigger the privilege against self-incrimination.  Id. at 121-22, 716 A.2d at 828-29 (citing Pennsylvania v. Muniz, 496 U.S. 582, 602 (1990) for proposition that performance of horizontal gaze nystagmus test constitutes "physical rather than testimonial evidence and thus does not violate privilege against self-

6

incrimination" (quotations omitted)).[7]  We concluded that in the absence of any statutory language prohibiting introduction of the refusal evidence, the fact that a statute specifically provided for admission of evidence of an individual's refusal to submit to an evidentiary breath test did not by implication mean that a refusal to submit to a field sobriety exercise is not admissible.  Id. at 122-23, 716 A.2 at 828.  We noted that admission of the evidence was subject to Vermont Rule of Evidence 403, but reaffirmed the absence of any across-the-board restriction against admitting evidence of a refusal to engage in a field sobriety exercise.  Id. at 123, 716 A.2d at 829.

## I.  Evidentiary Objections

¶ 14.    With this background in mind, we first consider defendant's arguments under the Vermont Rules of Evidence.  Defendant acknowledges we have held that refusal to participate in standardized field sobriety tests is relevant to show consciousness of guilt, subject to a balancing of probative value versus prejudicial effect pursuant to Rule 403.  For several reasons, however, she argues that the challenged evidence in this case is not probative, and that its admission is unduly prejudicial.  In particular, she argues that the exercise in question was not a standardized field sobriety test, and that its significance, if any, was not supported by any evidence that the exercise had scientific reliability.  She further argues that there are a host of reasons other than consciousness of guilt or impairment due to intoxication to explain her decision to stop the

_____

[7]    It is this leap from the nature of the actual performance of the exercise as non-testimonial to the conclusion that a refusal to perform the exercise is nontestimonial that defendant, in a late-raised argument, asks us to revisit.  Compare Blouin, 168 Vt. at 121-22, 716 A.2d at 828 with Opinion of the Justices to the Senate, 591 NE.2d 1073, 1078  (Mass. 1992) (explaining that conclusion that evidence of refusal to submit to test is nontestimonial does not necessarily follow from fact that test results themselves are nontestimonial, and concluding under state constitution that refusal evidence is testimonial because its relevance is based upon it being "reflective of the knowledge, understanding, and thought process of the accused") and State v. Fish, 893 P.2d 1023, 1032 (Or. 1995) (en banc) (concluding that individual's refusal to perform field sobriety tests is testimonial evidence under state constitution's self-incrimination clause).  See generally F. Whited, 1 Drinking/Driving Litigation: Criminal and Civil § 6:2 (2d. ed. 2015).

exercise after five-to-eight seconds. She points to her age, general physical infirmity, and physical deterioration. According to defendant, in light of the absence of any evidence supporting the validity of the exercise in the first place, and the presence of many explanations for her decision to stop the exercise, the evidence in question proved nothing, and its admission was prejudicial because it suggested otherwise to the jury.

¶ 15. We review the trial court's ruling admitting the testimony and videotape evidence for abuse of discretion. State v. McCarthy, 2012 VT 34, ¶ 14, 191 Vt. 498, 48 A.3d 616 ("The trial court's discretion to allow relevant but arguably prejudicial evidence is particularly broad because Rule 403 provides for exclusion only when the danger of unfair prejudice substantially outweighs the probative value. Unless the trial court either totally withheld its discretion or exercised it 'on clearly untenable or unreasonable grounds,' the trial court's evidentiary ruling will stand." (citation omitted)).

¶ 16. We conclude that the trial court did not abuse its discretion in admitting the evidence to show that defendant discontinued her participation in the exercise because: (1) the evidence may have some probative value in showing consciousness of guilt, and (2) especially given its instructions to the jury, the trial court could reasonably conclude that the prejudicial effect of the evidence did not substantially outweigh its probative value.

¶ 17. Our conclusion as to relevance flows from our decision in Curavoo. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. In Curavoo we concluded that a refusal to perform such exercises may demonstrate consciousness of guilt. 156 Vt. at 74-75, 587 A.2d at 964-65. The fact that

defendant may have other explanations for her decision does not mean that the evidence does not have <u>some</u> tendency to show consciousness of guilt.[8]

¶ 18.    Likewise, we conclude that the trial court acted within its discretion in balancing the probative value and prejudicial effect of the evidence.  Rule 403 authorizes the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.  V.R.E. 403.  Although the court did not specifically state that it was conducting a balancing pursuant to Rule 403, the record reflects that that is exactly what it did.  See <u>State v. Ovitt</u>, 2005 VT 74, ¶ 9, 178 Vt. 605, 878 A.2d 314 (mem.) ("The trial judge does not need to articulate the precise weights assigned to the probative value or prejudicial effect of evidence, or specify why one outweighs the other.").  In the course of the argument on the motion to suppress, the court not only noted the potential probative value of the evidence as recognized in <u>Curavoo</u>, but it ascertained that the State would not be offering any opinion as to whether the exercise had been successfully completed—one of defendant's biggest concerns with respect to prejudice.  Moreover, over the State's objection, the Court expressly instructed the jurors that they could consider whether defendant refused to perform the tests but were not required to draw any inference from evidence of a refusal.  This instruction further mitigated the potential prejudice identified by the defendant, and left defendant ample opportunity to advance alternative explanations for the refusal.

---

[8]    We emphasize our focus on defendant's termination of her participation in the exercise as the touchstone for determining the relevance of the evidence in question.  The validity of the manner in which she briefly performed the exercise as a means to evaluate impairment would be a distinct concern if the officer had testified that her performance demonstrated impairment.  He did not, and the list of factors that he cited to support his conclusion that defendant was impaired did not include the manner in which she briefly performed the one exercise she opted to start.  On cross examination, he explained that the two things he assesses when someone is performing the exercise are the individual's ability to estimate thirty seconds and the presence of eyelid tremors, neither of which, he acknowledged, was present here.  In closing, the State argued that defendant's stopping the exercise showed consciousness of guilt, but did not argue that the manner of her performance itself showed impairment.  For these reasons, we consider only the inferences the jury may draw from the fact that defendant stopped the test.

## II. Constitutional Arguments

¶ 19. Defendant's appeal raises a question that this Court has previously left unresolved: whether the Vermont Constitution requires—as a prerequisite to use of the individual's refusal as evidence in court—that an officer advise an individual that refusal to perform a field sobriety exercise may be admitted as evidence of consciousness of guilt.

¶ 20. Defendant's arguments have shifted through the course of this litigation, and are not entirely clear. In her brief, she suggests that as a matter of Fourth Amendment law, as well as under Chapter 1, Article 11 of the Vermont Constitution, an officer may not conduct field sobriety exercises, which constitute a seizure, without a warrant absent exigent circumstances. Thus, according to defendant, she had a right to be told that refusing to participate could be used as evidence against her. She further argues that Chapter 1, Article 10 of the Vermont Constitution, in contradistinction to the analogous compulsion clause of the Fifth Amendment to the United States Constitution, prohibits the police from compelling her to give evidence against herself, regardless of whether it is considered "testimonial" or not. Neither of these contentions supports the argument that defendant was entitled to notice that her refusal to perform field sobriety tests could be used as evidence against her.

¶ 21. Defendant's arguments on these points are legal in nature, and thus we review the trial court's decision anew, without deference. State v. Ford, 2010 VT 39, ¶ 7, 188 Vt. 17, 998 A.2d 684.[9]

---

[9] Although argument on the suppression motion included consideration of whether defendant was constitutionally entitled to notice that her refusal could be used as evidence, defendant did not identify the specific constitutional basis or bases for this argument below. We accordingly apply a plain error standard of review. See State v. Pelican, 160 Vt. 536, 538-39, 632 A.2d 24, 26 (1993) (stating that plain error will be found only where failure to recognize error would result in manifest injustice). However, because we resolve both arguments on the basis of our established case law, our analysis of these questions does not turn on the standard of review—plain error versus preserved error.

¶ 22.   We reject defendant's Fourth Amendment argument.  It is well established that police may, without a warrant but upon reasonable suspicion, ask a driver to perform field sobriety exercises.  Defendant is correct that a seizure occurs when an officer requests an individual to perform field dexterity tests to determine whether the individual should be processed for DUI.  State v. Gray, 150 Vt. 184, 190-91, 552 A.2d 1190, 1194 (1988).  But we have held that when supported by reasonable suspicion, such seizures are constitutional because "the minimal level of intrusion occasioned by the requirement that [an individual] perform the dexterity tests [is] clearly outweighed by the strong law enforcement interest in attempting to keep a suspected drunk driver off the roads of this state."  Id., 150 Vt. at 191-92, 552 A.2d at 1195; see also State v. McGuigan, 2008 VT 111, ¶ 13, 184 Vt. 441, 965 A.2d 511 (holding that administration of field-sobriety tests upon reasonable suspicion of DUI is reasonable for purposes of Fourth Amendment).  Defendant cites no authority in support of her suggestion that because defendant was driving with a suspended license, and thus would not have been able to drive away in any event, she could not be asked to perform field sobriety exercises without a warrant.  And defendant does not point to any other evidence that places this case outside of the usual rule.  In the absence of any support for defendant's position, we apply our established Fourth Amendment case law on the subject.  Accordingly, to the extent defendant is challenging the police officer's administration of the field sobriety tests at all, the challenge has no basis in the record or in law.  To the extent defendant is arguing that the Fourth Amendment, and its Vermont Constitution analog in Chapter 1, Article 11, nevertheless require some sort of warning to an individual asked to perform field sobriety exercises, she makes no argument linking those constitutional provisions to the claimed warning requirement.

¶ 23.   We likewise reject defendant's argument under Chapter 1, Article 10 of the Vermont Constitution, but we emphasize that the strength of our holding on this point is limited by the vagueness of defendant's arguments on appeal.

¶ 24. Defendant argues that the Vermont Constitution affords broader protection against self-incrimination than the United States Constitution because Article 10 provides that a person cannot be compelled to "give evidence against oneself," whereas the Fifth Amendment provides that a person cannot be compelled to be "a witness against himself." She argues that the protections against compelled self-incrimination in the Vermont Constitution accordingly extend to nontestimonial evidence.[10]

¶ 25. This argument flies in the face of our established law. Further, it is not entirely clear how the argument is logically connected to defendant's position that she was entitled to a warning that her refusal could be used as evidence at trial. With respect to the first point, we have repeatedly rejected the argument that Article 10 provides broader protections than the Fifth Amendment on account of the difference in language. See, e.g., State v. Rheaume, 2004 VT 35, ¶ 18, 176 Vt. 413, 853 A.2d 1259 ("Despite the historical recognition of the privilege against self-incrimination and the language of Chapter I, Article 10, we have consistently held that, in its application to adults, the Article 10 privilege against self-incrimination and that contained in the Fifth Amendment are synonymous."); State v. Ely, 167 Vt. 323, 330-31, 708 A.2d 1332, 1336 (1997) (stating that we have rejected "on a number of occasions" assertions that Article 10 provides broader rights than Fifth Amendment).

¶ 26. Moreover, it is not clear how applying Article 10 protections to nontestimonial evidence, including, presumably, the field sobriety exercises themselves, would lead to a requirement that police warn an individual that her refusal may be used as evidence in court. The logic of defendant's argument might support a conclusion that evidence of an individual's refusal to perform an exercise is inadmissible in court—an issue we do not revisit here, see ante, ¶ 11, n. 5. But defendant does not provide a logical connection between Article 10, as she

---

[10] Implicit in defendant's argument is the assumption that a refusal to perform field sobriety exercises, like the performance of those exercises, is testimonial for purposes of the United States Constitution. We express no opinion on the validity of this assumption.

understands it, and a requirement that an individual be warned of the consequences of a refusal before deciding whether to refuse a request to perform field sobriety exercises.

Affirmed.

FOR THE COURT:

_____

Associate Justice